THOMAS H. HARRISON, PLAINTIFF IN ERROR, V. J. THOMP-
SON BAKER ET AL., DEFENDANTS IN ERROR.

1. **New Trial.** Immaterial and irrelevant testimony admitted
   over defendant's objection, and which may have a tendency to
   mislead the jury, is good ground for a new trial.

2. **Charge to the Jury where there is no Evidence to
   which it is Applicable.** Where the court in charging the
   jury gives an instruction not called for by the evidence, and which
   is calculated to mislead them, the judgment will be reversed
   *High v. Merchants Bank*, 6 Neb., 155.

3. **New Trial:** VERDICT AGAINST EVIDENCE. Although a ver-
   dict supported by proof will not be disturbed because of an er-
   roneous instruction on an abstract proposition of law on a point
   not in the case, yet where the evidence is conflicting and evenly
   balanced, and there is testimony on the other side entitled to
   equal consideration, the verdict will be set aside and a new trial
   granted. *Meredith v. Kennard*, 1 Neb., 312, cited and distin-
   guished.

ERROR to the district court for Gage county. Tried be-
low before WEAVER, J.

*Bush & Rickards*, for plaintiff in error.

*J. H. Broady* and *J. E. Cobbey*, for defendants in error.

COBB, J.

The pleadings and testimony in this case are quite volu-
minous, but having reached the conclusion that there must be
a new trial on account of error in the reception of certain ob-
jectionable testimony offered by the defendants in error, and
the giving of certain improper instructions to the jury, we
will confine ourselves to so much of the record as may be
necessary to the presentation of those points.

The plaintiffs below, as the assignees of James S. Marsh,
claimed the ownership of a large number of reaping ma-

chines, which were in a shed or warehouse owned by Oliver Townsend, at Beatrice, Gage county. These reaping machines had been held by the sheriff, by virtue of a writ of attachment, but the levy thereof seems to have been released at the time that Baker, one of the plaintiffs, took nominal possession thereof in the name of the assignees. The plaintiffs claim, as well in their petition as in the testimony of Baker, that at that time he entered into an agreement with the defendant, in which the defendant agreed to take charge and possession of the machines as agent of the assignees, to take care of the property and keep the assignees "informed of everything that might transpire concerning it, and of any proceeding affecting it which might take place, and he was to inform them immediately if any attempt should be made to seize them, or if any attachment or writ should be served concerning the machines."

It appears that after the said Baker left Beatrice, the said reaping machines, or a part of them, were levied on by the sheriff and sold to satisfy a fee bill, then in his hands, against the said James S. Marsh, assignor of the plaintiffs, and bid in by the said defendant in the name of a brother of his, at a price far below their value, and it was for the sacrifice and loss of these machines that this suit was brought.

There was evidence tending to prove all of the above facts, sufficient, we think, to have sustained a finding for the plaintiffs had they relied only on proper testimony. But, for some reason not apparent to the writer, they conceived it necessary to their case to prove that at the time of Mr. Baker going to Beatrice, looking at the machines, and employing the defendant to look after them, they had not been levied upon by virtue of the second attachment. For that purpose they introduced Mr. Broady as a witness, who, *inter alia*, testified as follows: "In regard to the conversation with Mack, the sheriff, I think it was the last day of the court, the fall term, the last of October or first of

November, I cannot fix the date.   *   *   *   We were
going down from the court house with Mack; near Clark's
corner he asked Mack." Objected to by the defendant's
counsel as immaterial, incompetent, etc. Objection over-
ruled, and defendant excepts. "I asked if *alias* attach-
ment had been levied on these machines. He said he did
not know; the writ was in the hands of the deputy. Just
then the deputy came walking across from towards the
Emory House. He called him up and asked him if the
writ had been levied, and he said not. I know he occu-
pied the position of bailiff or deputy sheriff. Then Baker
notified him he had taken possession of the machines, and
no one had any right to seize them but himself, or by his
authority, and forbid his taking the machines under any
writ. He warned him from levying on any of the ma-
chines." Defendant's counsel objects, and asks to have the
conversation with Mack stricken out. Overruled and ex-
cepted to. A similar statement of these conversations is
contained in the deposition of J. Thompson Baker, one of
the plaintiffs, taken and introduced on the part of the plain-
tiffs, which testimony was moved to be stricken out by the
defendant before the reading of said deposition to the jury,
which motion was refused.

We know of no rule of evidence upon which this testi-
mony was admissible. If it was intended to establish the
fact to the jury that the *alias* attachment, or the fee bill,
upon which the machines were afterwards sold, had not
then been levied on them, it can scarcely be claimed that
the statement of the sheriff or his deputy out of court would
be the best evidence, or any evidence, of that fact. And
certainly, under the issues in this case, no statement made
by the sheriff, or his deputy, in the absence of the defend-
ant, is admissible against him. While we may not be able
to see what particular effect this testimony had upon the
jury, it was well calculated to divert their minds from the
true issues involved in the case, and it was the right of the

defendant to have his case go before the jury without being encumbered with illegal or irrelevant matter.

Among other things given by the court in charge to the jury, we find the following assigned for error by the plaintiff in error: "If the jury believe from the evidence that defendant connived and planned to prevent competition of bidders at the sale of the property described in the petition under the fee bill in evidence, and to cause a sacrifice of the property at such sale, and did thereby damage the plaintiffs, then they must find for the plaintiffs, irrespective of whether defendant had agreed to take care of the property as alleged in the petition."

Aside from the unfortunate use of the word *connive*, we have no fault to find with this instruction, only that it had no application either to the testimony or theory of the plaintiffs' case. If the defendant is liable at all his liability depends entirely upon his having agreed, either expressly or impliedly, to act as the agent of the plaintiffs in the care of the property. If he made such agreement and afterwards allowed the property to be sold by the sheriff without notifying his principals, but bid it off himself in the name of a stranger to the plaintiffs, he is liable, yet the capital link in the chain of his liability, upon which all the rest hang, is his agreement. The jury, then, should not have been told that in any event they could find for the plaintiff, unless they should believe from the evidence that the defendant entered into the agreement with the plaintiffs to take charge of the property, etc. Again, there was no testimony before the jury that the defendant connived —in whatever sense that word may be used—or planned to prevent competition of bidders at the sale of the property, nor that there was not all the competition at the sale that could be expected or was desired.

In the case of *Meredith v. Kennard*, 1 Neb., 312, the law is stated in the syllabus, as follows:

"4. When the court gives the jury instructions not re-

quired nor called for by any evidence adduced in the cause, and it appears that such unnecessary instruction misled the jury in its consideration of the facts of the case, the judgment will be reversed.

" 5.   If an erroneous charge be given on an abstract proposition, or on a point not in the case, and the verdict is supported by proof in the cause, the judgment will not be reversed."

We find it difficult to apply these rules to the case at bar, for the reason that the evidence is so conflicting and evenly balanced on what we regard as the fundamental facts of the case that, while, had the jury reached their verdict without the help of improper evidence or an erroneous instruction, we would say that there was legal testimony to sustain it, yet it cannot be denied that there is also considerable testimony on the other side, possibly entitled to equal consideration from the jury, and we fail to appreciate the justice or fairness of a rule which would allow a party to gain a verdict aided in part by illegal testimony or an erroneous instruction, and allow such verdict to stand because possibly sustained by a feather's weight preponderance of unobjectionable evidence.

The judgment is reversed, and the cause remanded to the district court for further proceedings according to law.

REVERSED AND REMANDED.

A re-hearing of this case was had after the filing of the above opinion, and the judgment of reversal re-affirmed, all the judges concurring.