## Union P. R. Co. v. Ira D. Marston.

[Filed September 17, 1890.]

1. **Common Carriers:** Injuries to Goods: Verbal Agreement: Bill of Lading: Variance.    M. applied to an agent of the Rock Island & Peoria R. Co., at one of its stations in the state of Illinois, to ship certain office furniture, including a stove, to Kearney on the line of defendant's road in this state. The agent informed M. that the custom was for shippers to release stoves, but advised him not to do it for reasons given, but to pay the additional expense of sending it at carrier's risk. To this M. assented, and offered to pay the freight to said agent, who informed him that he could as well pay it at the end of the route.    The agent placed the goods into a car of a freight train which proceeded on its way.    Four or five hours afterwards the agent handed him a paper, saying that it was a receipt for the goods shipped.    This paper M. put in his pocket without examining it, and which proved to be a bill of lading of the goods, ·containing, *inter alia*, the condition, "stoves at owner's risk of breakage."    The goods were received at C. B. from the R. I. R. Co., by defendant and carried to K.    Upon arrival the stove was found to have been broken en route.    In an action by M against the U. P. Railway Company for damages for injury to stove, *held*, that, as between M. and the R. I. & P. R. Co., the stove was carried at carrier's risk.

2. **Certain instructions** given as requested, and others modified and given as modified, set out with such modifications in the opinion, *held*, rightly given, and rightly given as modified.

3. **Trial:** View: The Evidence *held* to sustain the verdict, especially in view of the fact that upon the trial the jury were ordered and permitted by the court, at the request of the defendant, to go out in charge of a bailiff and examine the stove in its broken and damaged condition.

Error to the district court for Buffalo county.    Tried below before Hamer, J.

*J. M. Thurston, W. R. Kelley,* and *J. S. Shropshire,* for plaintiff in error:

Defendant in error, having accepted the shipping receipt

16

and brought suit upon it, was bound by its terms. (*Whitworth v. R. Co.*, 87 N. Y., 413; *Carsure v. Harris*, 4 G. Greene [Ia.], 516; · Hutchinson, Carriers, secs. 240, 241, 243, 248, 265.) As the testimony shows that the loss did not occur on defendant in error's line, it is not liable. (*Jenneson v. R. Co.*, 5 Pa. L. J. Rep., 409; *Morse v. Brainerd*, 41 Vt., 550; *Burroughs v. R. Co.*, 100 Mass., 26.) Defendant in error, as a connecting line, had a right to rely upon the bill of lading exempting the carrier from liability. (*St. Louis Ins. Co. v. R. Co.*, 3 Am. & Eng. R. R. Cases, 271; *Kiff v. R. Co.*, 18 Id., 618; *Hot Springs R. Co. v. Trippe*, Id., 562 [42 Ark., 465]; *L., etc., R. Co. v. Corcoran*, Id., 602 [40 Ark., 375].) Reduced cost of transportation is a good consideration for a clause in a bill of lading, limiting liability. (*Sprague v. R. Co.*, 23 Am. & Eng. R. R. Cases, 685; *Grogan v. Exp. Co.*, 30 Id., 9.)

*Ira D. Marston, contra:*

A bill of lading given subsequently to a verbal agreement with less stringent terms, does not bind the shipper unless known to and approved by him. (2 Rorer, Railroads, p. 1320; *Bostwick v. R. Co.*, 45 N. Y., 712; Comp. Stats., 1887, p. 558, sec. 5; Const., art. 11, sec. 4.) The legislature carrying out the constitutional provision cited, has provided for just such cases as the one at bar. (Comp. Stats., ch. 16, sec. 111; *A. & N. R. Co. v. Washburn*, 5 Neb., 120–1.)

COBB, CH. J.

The plaintiff below alleged that the defendant is a railway corporation under the laws of the United States, doing business in this state as a common carrier of freight and passengers; that on December 30, 1885, by itself and its duly authorized agent, it received at Cambridge, Illinois, for transportation to Kearney, Nebraska, one hard coal base

burner stove of the value of $40, and thereby agreed, in consideration of $1.52 per hundred weight, to safely transport and deliver the same to the plaintiff at Kearney. That no part of said agreement was in writing, but that the defendant, by its said agent, delivered to the plaintiff a certain receipt or bill of lading, a true copy of which is attached hereto, but that its conditions were not brought to the plaintiff's notice or accepted by him; on the contrary, it was expressly agreed that said goods should be shipped at the carrier's risk, and the rate of freight demanded for transportation at carrier's risk was paid to the agent.

It is alleged that the weight of the stove was 340 pounds; that he paid the defendant for transportation to Kearney, one and fifty-two hundredths dollars per 100 pounds; that the defendant did not safely transport the stove, but negligently and carelessly broke and destroyed the same while in its possession as such common carrier, and has not delivered it as it was bound to do, to the damage of the plaintiff of $40, with interest from January 12, 1886, and asks judgment therefor, and costs of suit.

EXHIBIT D.

"ROCK ISLAND & PEORIA RAILWAY COMPANY,

"CAMBRIDGE, ILL., Jany. 1, 1886.

"Received of Ira. D. Marston, by the Rock Island & Peoria Railway Co., the following property in apparent good order (except as noted), marked and consigned as in the margin, which they agree to deliver, with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order (the dangers incident to railroad transportation, loss or damage by fire while at depots or stations, loss or damage of combustible articles by fire while in transit, and unavoidable accidents excepted) at Rock Island station, upon the payment of charges. The company further agrees to forward the property to the place of destination, as per margin, but are not to be held liable on account thereof after the same

shall be delivered as above. The company, however, guarantee the through rate of freight, as designated below.

"Conditions: The company do not agree to carry the property by any particular train, nor in time for any particular market. Oils and all other liquids at owner's risk. Liquids in glass or earthen, drugs and medicines in boxes, glass and glassware in boxes, looking glasses, marbles, stoves, stove plates, and light castings, earthen or queensware, at owner's risk of breakage.

"Agricultural implements, cabinetware and furniture not boxed, and carriages at owner's risk of breakage or damage by chafing. Oysters, poultry, dressed hogs, fresh meat, and provisions of all kinds, trees, shrubbery, fruits, and all perishable property at owner's risk of frost and decay.

"It is a part of this agreement that all other carriers transporting the property herein receipted for, as a part of the through line, shall be entitled to the benefit of all the exceptions and conditions above mentioned; and if carried by water, he is entitled to the further benefit of exception from loss or damage arising from collision, and all other damages incident to lake and water navigation. All freight not taken away on arrival will be stored free for twenty-four hours, after which regular storage rates will be charged.

"Marks and Consignees: Ira D. Marston, Kearney, Neb.

"Agents will sign this form of shipping receipt, and no other, unless authority is given by the general freight agent. Agents will be particular to number both receipt and shipping bill, which must be alike.

"Rate: 152 per cent from Cambridge, Ill., to Kearney, Neb.

"Articles: 5 bx. books; one desk, boxed; 1 blank case bks; 1 office chair, 1 stove; 1940 weight (subject to correction). G. A. Cooper, *Agent*.

U. P. R. Co. v. Marston.

" STATE OF ILLINOIS,  } ss.
    HENRY COUNTY.    }

"On this twelfth day of August, 1886, personally appeared before me, G. A. Cooper, the signer of a copy of the bill of lading on the reverse side hereof, and, being duly sworn, says that the said copy is a true copy of the original bill of lading as shown by the books of the Rock Island & Peoria Railroad Co. at their station.

" Cambridge, Ill., August 13, 1886.

                    " G. A. COOPER.

"Subscribed and sworn to before me, this 13th day of August, 1886.              W. H. SHEPARD,
                         " Notary Public."

The defendant answered that it is a railway corporation organized under the laws of the United States and that it has a defense to this action arising under said laws. Denying generally the allegations of the plaintiff, it says " that the plaintiff entered into a contract with the Rock Island & Peoria Railway Company, for a certain price, whereby the said company agreed to transport the said stove; that neither the said railway company nor the Rock Island & Pacific Railroad Company, or either of them, were the agents of defendant at Cambridge, Illinois, or that they acted as its agents in receiving and delivering the said stove; that the defendant herein has no line of road in the state of Illinois, and did not receive the stove, as alleged, from the plaintiff at Cambridge, and made no contract or agreement of any kind in respect to transporting and delivering said stove.   It has no knowledge other than that derived from the plaintiff's petition that the 'Exhibit D' attached thereto is a true and accurate copy of the bill of lading or agreement between the plaintiff and the Rock Island & Peoria Railway Company, and therefore denies the same.

" Defendant says that the said stove was not injured,

broken, or destroyed on its line of road, and was not damaged in any way while the same was in its possession."

The plaintiff replied denying each and every allegation in the answer contained.

There was a trial to a jury, with findings for the plaintiff and damages assessed at $40.

At the request of the defendant the jury returned special findings as follows: "That the stove was broken between Cambridge and Kearney on the Union Pacific railroad, in the defendant's possession, by reason of the negligence of the defendant."

The defendant's motion for a new trial being overruled, judgment was entered upon the verdict, to which the defendant excepted on the record and brings it to this court on the assignments of error as follows:

"1. That the verdict is contrary to law and is not sustained by the evidence.

"2. That it is excessive, appearing to have been rendered under the influence of passion and prejudice.

"3. For errors of law occurring at the trial and duly excepted to by the defendant.

"4. In modifying instructions Nos. 1, 2, 3, and 4, offered by defendant, and which should have been given without modification.

"5. In refusing instructions Nos. 6 and 7 asked by defendant.

"6. In giving plaintiff's instructions Nos. 3 and 5.

"7. Because each of the special findings of the jury is not supported by sufficient evidence, and is contrary thereto.

"8. Because the plaintiff was permitted to amend his petition by striking out the words 'as per usual bill of lading.'

"9. In overruling the defendant's motion for a new trial."

It is clearly established by the pleadings and evidence that the defendant in error, being about to remove from

Cambridge, in the state of Illinois, to the city of Kearney, in this state, went to the office of the Rock Island & Peoria Railroad Company, at Cambridge, taking with him certain office furniture, including a hard coal base burner stove, and procured the same to be shipped over the said railroad and its connections to Kearney; that the station agent, in charge of said station, through and by whom said goods were received and shipped, then and there, and as a part of the *res gestæ*, informed the defendant in error that the custom was for shippers to release stoves when they shipped them, but advised him not to do it, as his goods were going a long distance, he had better pay the additional expense of sending it at carrier's risk; whereupon defendant in error replied that that was just what he proposed to do, etc., and asked the agent what would be the extra charge on the stove at carrier's risk; the agent figured it up and replied, "seventy-five cents;" defendant in error replied "Very well, I shall pay you;" the agent said "No, you can pay at the end of the line," and also explained to defendant in error the arrangement of paying the freight on the goods over the roads over which it should go; that at or about the time this conversation occurred the stove had been received by the said agent and pronounced to be in perfect condition for shipment; and very shortly afterwards the car in which the goods, including the stove, were placed proceeded on its way as a part of the west bound freight train. Some five or six hours afterwards, as defendant in error was taking the passenger train, for Kearney, the said agent came out of the station house and handed him a paper saying, "Here, Marston, here is your receipt for your goods." This paper Marston put into his pocket and never looked at it until some time after his arrival at Kearney, when he received notice that the stove had arrived there in a broken condition.

It appears that the paper handed to Marston by said station agent was a receipt for the goods shipped by Mars-

ton including " 1 stove, 1940," and contained the follow-
ing, amongst other conditions : "Liquids in glass,    *    *
stoves,    *    *    *    at owner's risk of breakage." The ques-
tion here arises, and it is the leading one in the case, Was
the shipper, the defendant in error, under the facts and cir-
cumstances above stated, bound by the above condition of
the receipt or bill of lading as it is usually called? To this
defendant in error cites section 5 of chapter 72, Compiled
Statutes.   I here copy the section : "No notice, either ex-
press or implied, shall be held to limit the liabilities of
any railroad company as common carriers unless they shall
make it appear that such limitation was actually brought
to the knowledge of the opposite party and assented to by
him, or them, in express terms before such limitation shall
take effect." He also cites 2 Rorer on Railroads, 1320, and
*Bostwick v. B. & O. R. Co.*, 45 N. Y., 712. Upon a c .nsid-
eration of these authorities it seems very clear to me that, as
between Marston and the Rock Island & Peoria R. Co.,
the stove was carried at the carrier's risk.    But whether
the contract of shipment between said railroad company
and the shipper was binding upon the defendant, as the
owner of the connecting line of railroad that received the
stove at Council Bluffs, and carried it from thence to
Kearney, I do not deem it necessary to decide in the case
under consideration.

This brings me to the consideration of the instructions.
Those given at the request of the plaintiff, defendant in
error, are as follows :

"3. That if you believe from the evidence that the
stove in question was damaged, and that such damage oc-
curred on the line of the defendant and through the negli-
gence or carelessness of its agents or employes, and while
the goods were in defendant's possession, you will find for
the plaintiff, and assess his damages at such sum as the evi-
dence shows him entitled to, not, however, exceeding forty
dollars.

"5. That when it is proven that the goods in question were in the possession of the defendant and were damaged at some place on the route, then the burden of proof is upon the defendant to show that the damage occurred on some other than its line, and unless you believe from the evidence that the goods, if damaged, were damaged on some other line than that of the defendant, you will find for the plaintiff."

The defendant, plaintiff in error, then asked seven instructions. The fifth was given as asked, as follows:

"If you shall find that the rate as fixed in the shipping receipt, and as paid by the plaintiff, for the transportation of this stove, was what is designated as 'owner's risk' rate, and that this defendant received the stove from the connecting line with that understanding, and carried it at that rate, then the plaintiff cannot recover, unless you shall find that the stove was broken through the negligence of the defendant on its line of road."

The instruction numbered 1, asked by the defendant, was as follows:

"The jury are instructed that if you find that the agent at Cambridge, Illinois, issued and delivered to the plaintiff a bill of lading or shipping receipt for the goods in controversy, and that he accepted the same without any objection, that, so far as this defendant is concerned, it became and was the only contract of shipment, and by the acceptance thereof the plaintiff became bound by the terms and conditions therein contained. (Modified thus:) Except so far as such conditions by their terms may have undertaken to release the railroad from the consequences of negligence and carelessness. Any arrangement or agreement entered into by the plaintiff and said agent before the delivery of said bill of lading to said plaintiff cannot be binding upon this defendant, so far as such agreement contradicted the terms of, or was at variance with, said bill of lading or shipping receipt. (Modified thus:) If the agent at Cam-

bridge called the attention of the plaintiff to the conditions of the receipt, or otherwise notified the plaintiff that the paper he gave him contained the contract of shipment.

"II. The jury are instructed that the mere fact that the plaintiff's stove was delivered in a broken condition does not establish the plaintiff's right to recover from the defendant, but in order to entitle the plaintiff to recover, it must appear that the stove was broken and damaged while in the hands of the defendant, and by its negligence, so that, unless you shall find that the stove was broken on the defendant's line of road and through its negligence, your verdict must be for the defendant. (Modified thus:) If the stove was damaged because of the negligence or carelessness of the carrier when it arrived at Kearney, the burden of proof is upon the defendant to show that the damage did not occur upon its line.

"III. You are instructed that where a carrier receives and carries goods at a reduced rate, it is a sufficient consideration for limiting its liability, so that if you shall find that the rate paid by the plaintiff for the shipment of the stove was a reduced rate made for the purpose of limiting the liability of the carrier for damage for breakage, then the plaintiff, under the terms of his shipping receipt, cannot recover, unless you shall further find that the stove was broken while in the possession of this defendant, and that it was so broken by means of some actual negligence of this defendant. To hold the defendant guilty of negligence it must appear to your satisfaction that it failed to exercise ordinary care in the handling of the stove. (Modified thus:) Yet if the stove was broken when it reached Kearney because of the negligence and carelessness of the carrier, the burden of proof is upon the defendant to show that the damage occurred on another line than defendant's.

"IV. You are instructed that if you shall find that the plaintiff's stove was received from the connecting line by the defendant at Council Bluffs in the broken condition in

which it was when delivered at destination, then for any damage resulting to the plaintiff by reason of the breaking of said stove, this defendant would not be liable. (Modified thus:) If, however, the stove was damaged when it arrived at Kearney because of the negligence and carelessness of the carrier, then the burden of proof is upon the defendant to show that the damage did not occur upon its line."

It does not appear from the record whether the sixth and seventh instructions asked were given or not, and no exception being noted thereon, they will not be considered.

At the request of the defendant, plaintiff in error, the court submitted to the jury the following questions for special findings of fact:

"1. On what part of the route between Cambridge and Kearney was the stove broken?

"2. Was the stove broken in any manner while in this defendant's possession?

"3. Was the stove broken by reason of any negligence of the defendant?"

With a general verdict for the plaintiff and assessing his damages at $40, the jury returned special findings as follows:

"1. On what part of the route between Cambridge and Kearney was the stove broken? Answer. Broken on the U. P. R. R.

"2. Was the stove broken in any manner while in this defendant's possession? Answer. Yes.

"3. Was the stove broken by reason of any negligence of the defendant? Answer. Yes."

It appears from the bill of exceptions that the stove, although one that had been used two winters, was, at the time it was shipped at Cambridge, Illinois, in good condition; that there was evidence tending to prove that at the time it arrived at Council Bluffs, the end of the Chicago, Rock Island & Pacific R. R. line, it was broken or

cracked at the base, and in this condition received by the defendant, and that when it arrived at Kearney, the place of destination, it was also broken at the top, was rusty, and covered with snow. It does not appear from the evidence, to which one of these breaks the damage to the stove, which destroyed its value, should have been attributed; but this question is set at rest by the fact which appears of record, that upon the trial, at the request of the defendant and the order of the court, the jury, under the charge of a special bailiff, proceeded to the place where the stove was and viewed the same. · The jury, after this view of the property, were, also at the request of the defendant, instructed to find, specially as we have seen, whether the stove was broken upon the line of the defendant while in its possession and through the negligence of its servants. The breaking here spoken of was doubtless intended by the court and understood by the jury to be that which, under the evidence, caused the damage to the stove for which the suit was brought, and there is nothing in the case to show that any other breaking was considered by them in making up the verdict.

Under the instruction, number 5, given at the request of the defendant, independent of those given at the request of the plaintiff, or the modifications of the others requested by the defendant and given as modified, I think the jury were justified in finding for the plaintiff, if such finding, as must be presumed, was confined to such damage to the stove as was caused after it was transferred to the defendant's cars at Council Bluffs. This, it is true, depends upon the correctness of the proposition contained in the fifth instruction given at the request of the plaintiff: "That when it is proven that the goods in question were in the possession of the defendant, and were damaged at some place on the route, then the burden of proof is upon the defendant to show that the damage occurred on some other than its line." This is admitted to be the law at p. 10 of the brief of plaintiff in error.

The question of excessive damages is not discussed for the reasons : (1) That the evidence on that subject is conflicting; the evidence of the plaintiff and one other witness sustaining the verdict as to the amount of damages, and that of some of the witnesses for defendant fixing the damages at a much lower sum.; and (2), for the reason that by procuring the court to order the jury to go out under the charge of a bailiff and examine the stove, the defendant introduced into the case an element of evidence which was not, and could not be, presented to this court by bill of exceptions, and without which any analysis of the testimony as to the extent of the damage to the property must be incomplete.

The questions whether the defendant company was bound to carry the plaintiff's goods under the terms of the oral contract made between plaintiff and the agent of the Rock Island & Peoria R. R. at Cambridge, or whether, having carried them in ignorance of such oral contract, it was not upon notice thereof, and that plaintiff claimed that the goods were shipped at carrier's risk, entitled to charge its schedule rate for such carriage over its portion of the route, for goods of that class carried at carrier's risk, do not arise in the case, and are not considered.

The judgment of the district court is

AFFIRMED.

THE other judges concur.