FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COM-
PANY V. JOHN WATERS.

FILED FEBRUARY 16, 1897.   No. 6999.

1. **Carriers: FREIGHT: CONNECTING LINES.** It is the duty of a railroad company in this state, subject to such reasonable rules as may be adopted in the transaction of its business as a common carrier, to receive and transport goods offered for shipment to the terminus of its line, and in case such goods are consigned to a point beyond its line, to safely deliver them to a connecting carrier.

2. ———: **LIABILITY BEYOND LINE OF CARRIER.** A railroad company receiving for shipment goods consigned to a point on the line of a connecting carrier, under an agreement to transport them to the terminus of its own road, is neither at common law nor by statute of this state answerable therefor after their safe delivery to the connecting line named in the bill of lading or contract of shipment.

3. ———: **BILL OF LADING.** Bill of lading examined, and construed as an agreement for the carriage of goods over the defendant's line of road only.

4. **Instructions.** An instruction unwarranted by the evidence, although an accurate statement of the law, is ground for reversal, provided it has a tendency to mislead the jury.

ERROR from the district court of Seward county. Tried below before WHEELER, J. *Reversed.*

*William B. Sterling, B. T. White,* and *D. C. McKillip,* for plaintiff in error:

A common carrier of goods may by special contract confine its liability to its own line, though the goods are

consigned to a place on a connecting line. (*Myrick v. Michigan C. R. Co.*, 107 U. S., 102; *Ogdensburg & L. C. R. Co. v. Pratt*, 22 Wall. [U. S.], 123; *McCarn v. International & G. N. R. Co.*, 19 S. W. Rep. [Tex.], 547; *Wichita V. R. Co. v. Swenson*, 25 S. W. Rep. [Tex.], 47; *Mulligan v. Illinois C. R. Co.*, 36 Ia., 181; *Detroit & M. R. Co. v. Farmers & Millers Bank of Milwaukee*, 20 Wis., 130; *Pendergast v. Adams Express Co.*, 101 Mass., 120; *Berg v. Atchison, T. & S. F. R. Co.*, 30 Kan., 561; *American Express Co. v. Second Nat. Bank of Titusville*, 69 Pa. St., 394; *Taylor, Cleveland & Co. v. Little Rock, M. R. & T. R. Co.*, 32 Ark., 399; *Central R. Co. v. Avant*, 5 S. E. Rep. [Ga.], 78; *Savannah, F. & W. R. Co. v. Harris*, 7 So. Rep. [Fla.], 544; *Goodman v. Oregon R. & N. Co.*, 49 Am. & Eng. R. Cas. [Ore.], 87; *Nines v. St. Louis, I. M. & S. R. Co.*, 18 S. W. Rep. [Mo.], 26.)

*Norval Bros.* and *George W. Lowley, contra:*

A carrier must furnish suitable vehicles for transportation, and if it furnishes unfit or unsafe vehicles it is not exempt from responsibility because the shipper knew of the defects. (*Ogdensburg & L. C. R. Co. v. Pratt*, 22 Wall. [U. S.], 123; *Gulf, C. & S. F. R. Co. v. Trawick*, 15 S. W. Rep. [Tex.], 568; *Hunt v. Nutt*, 27 S. W. Rep. [Tex.], 1031; *Welsh v. Pittsburg, F. W. & C. R. Co.*, 10 O. St., 65; 19 Central Law Journal, 164, 165; 27 Central Law Journal, 80.)

Where the damage to goods was caused by negligence in furnishing an unsuitable car, the fact that damage actually occurred on another line is immaterial. (*Hunt v. Nutt*, 27 S. W. Rep. [Tex.], 1031; *Alabama & V. R. Co. v. Searles*, 16 So. Rep. [Miss.], 255.)

Instructions must be construed together, and if when considered as a whole they properly state the law, it is all that is required. (*Sioux City & P. R. Co. v. Finlayson*, 16 Neb., 578; *Gray v. Farmer*, 19 Neb., 69; *Bartling v. Behrends*, 20 Neb., 211; *City of Lincoln v. Smith*, 28 Neb., 762; *Barton v. McKay*, 36 Neb., 633.)

A station agent of a railroad company can bind it by a verbal contract to furnish cars at a given time for the

42

shipment of freight, unless the shipper knows that the agent has no such authority. Inability of a carrier to furnish cars contracted for, owing to unusually heavy traffic at the time, is no defense to an action for failure to furnish such cars. (*Gulf, C. & S. F. R. Co. v. Hume*, 27 S. W. Rep. [Tex.], 110; *Gulf, C. & S. F. R. Co. v. Hodge*, 30 S. W. Rep. [Tex.], 829.)

Defendant below is liable in case at bar. (*Union P. R. Co. v. Marston*, 30 Neb., 248; *Missouri P. R. Co. v. Twiss*, 35 Neb., 267.)

Post, C. J.

This was an action below in the district court for Seward county, wherein the defendant in error, John Waters, recovered judgment against the plaintiff in error, the Fremont, Elkhorn & Missouri Valley Railroad Company (hereafter called the "railroad company"), and from which the latter prosecutes proceedings in error to this court.

The cause of action alleged in the petition below is (1) that the defendant company neglected and refused, upon the plaintiff's demand, to furnish him, the said plaintiff, cars for the transportation of corn from Goehner station, in this state, to Chicago, between November 12 and 28, 1891, although notified in advance that he would require twelve cars for the shipment of his grain, amounting to 5,000 bushels and over, then on hand, which was, as the defendant well knew, worth in the Chicago market, if delivered during the month of November, eighty cents per bushel, but which was when subsequently delivered worth forty-five cents, or less, per bushel; (2) that on and after November 28, 1891, plaintiff delivered to the defendant company, in good condition, eight car loads of shelled corn, which the latter undertook to transport from the station above named to Chicago, but that through the negligence of the defendant, sixty bushels of said corn, of the value of eighty cents per bushel, was lost, and 5,014 bushels thereof was, on account of the bad condi-

tion of the cars furnished by the defendant, damaged in
transit to the amount of twenty cents per bushel.    The
answer admits the receipt by the defendant company of
eight cars of corn, which it undertook to transport from
Goehner station to its terminal point at Missouri Valley,
in the state of Iowa, where said corn was, by agreement
with the plaintiff, delivered in as good condition as when
received, to the Chicago & Northwestern Railroad Com-
pany, a connecting carrier, and was by the last named
company in like condition delivered to the plaintiff's con-
signee in the city of Chicago.    It is in the answer further
alleged that there was during the period mentioned in the
petition, an unusual and extraordinary demand for cars.
to be used in the shipment of corn to the Chicago market,
and that the defendant company made a just and equita-
ble distribution of cars among its patrons, including the
plaintiff.    Accompanying the foregoing statements of the
answer is a denial which puts in issue the other allega-
tions of the petition.    The reply is a general denial.

The assignment of the petition in error to which espe-
cial prominence is given by the argument of counsel for
the railroad company relates to the giving of the seventh
instruction, as follows: "You are instructed, as a matter
of law, that where two or more carriers by agreement
unite to complete a line of transportation, the freight to
be divided between them in definite proportions, and one
of them receives goods for one freight for the whole line,
and gives a through bill of lading, then each carrier is the
agent of the other, and each is liable for damages done to
the goods, or any unreasonable delay in transporting the
same, on whatever part of the line the same may occur;
and, in this case, you are further instructed that the bills
of lading introduced in evidence recite that the cars of
corn therein mentioned were received by the defendant
corporation at Goehner to be carried to Missouri Valley,
and thence to Chicago over the Chicago & Northwestern
railway, and, if you believe from the evidence that the
defendant corporation, at the time the corn was received,

had an arrangement or agreement with the Chicago & Northwestern railway, by which they were each to unite and form a complete line of transportation between Goehner and Chicago, and each of the connecting companies to have an agreement or definite part of the freight, as between themselves, then the defendant would be liable for any damage or loss happening to the corn on any part of the entire route." This instruction is, it is contended, erroneous, for the reason that it assumes the existence of facts as to which there is an entire failure of proof; a criticism in our judgment altogether warranted by the record. There is in the bill of exceptions no evidence tending to prove that the defendant undertook to transport the corn beyond the terminus of its own line, or an agreement between the said defendant and the Chicago & Northwestern Company with respect to through traffic over their respective lines, while by the contract of shipment, as evidenced by the several bills of lading, it was expressly stipulated that the liability of the defendant company should cease upon the delivery at its depot at Missouri Valley of the property which is the subject of this controversy, in as good condition as when received, to the Chicago & Northwestern Company as a connecting carrier. We insert here so much of the contract mentioned as relates to the subject under discussion:

"READ THIS CONTRACT.

"*Receipt for Freight Received at Goehner, Neb., Dec. 5, 1891.*

"Received from John Waters in apparent good order by the Fremont, Elkhorn & Missouri Valley Railroad Co., the following described packages marked and numbered as per margin, subject to the conditions and regulations of the published tariff of said company, to be transported over the line of this railway to Mo. Valley, Ia., and delivered, after payment of freight, in like good order to C. & N. W. Ry., a connecting or carrier (if the same are to be forwarded beyond the lines of the company's road) to

be carried to the place of destination, it being expressly
agreed that the responsibility of this company shall cease
at this company's depot, at which the same are to be de-
livered by such carrier, but this company guarantees that
the rate of freight for the transportation of said packages
from the place of shipment to Chicago shall not exceed
tariff per cwt. and charges advanced by this company
subject to the following conditions:

\*          \*          \*          \*          \*          \*          \*

| "Marks and Consignee. | Description of Articles. |
|---|---|
| "Order of H. T. Jones. | Bulk Corn, 40,000 lb. |
| "Notify Bartlett, Frazier &  Co., Ch'go. | |
| "Car initial, F., E. & M. V. | |
| "Car No. 3026. | |

"J. M. McFADDEN,
"*Agent.*"

McFadden, the defendant's station agent at Goehner,
testifies on his cross-examination as follows:

Q. Is that (the C. & N. W. Company) a part of the Elk-
horn?

A. It is under a different management.

Q. It is the same system?

A. I guess it is.

There was also introduced in evidence by the plaintiff
below a map, upon the upper margin of which appears in
bold type the words: "Chicago & North-Western System.
The Elkhorn Valley Line.   Fremont, Elkhorn & Mo. Val-
ley R. R., and Connections," and in another place, in
smaller type, the following: "The North-Western Line,
F., E. & M. V., and S. C. & P. R. R." There appears also
upon said map, in different colors, the lines of the Chicago
& Northwestern, the Fremont, Elkhorn & Missouri Val-
ley, the Sioux City & Pacific, and the Chicago, St. Paul,
Minneapolis & Omaha Railroad Companies. This evi-
dence was, it may be assumed, admissible as tending to
prove the relationship to each other, in some manner or
for some purpose, of the several railroad companies above

named.    But the character of such relation, whether that of a common management, a common ownership, or the not unusual agreement for the interchange of business, is not indicated by the words "system" as there employed, and such evidence, with the inferences deducible therefrom, is certainly insufficient to overcome the positive agreement contained in the bills of lading.

As to the common-law liability of the initial carrier upon a through bill of lading on account of loss or damage to goods by a connecting line to which they have been delivered for transportation, the authorities are not harmonious.    The question of the carrier's liability in such case has, in this state, been made the subject of both constitutional and statutory regulation.    Section 4, article 11, constitution of 1875, provides: "The liability of railroad corporations as common carriers shall never be limited."    Section 111, chapter 16, Compiled Statutes, entitled "Railroads," declares that "any railroad company receiving freight for transportation shall be entitled to the same rights and be subject to the same liabilities as common carriers;" and by section 5 of article 1, chapter 72, Compiled Statutes, entitled "Railroads," it is provided that "No notice, either express or implied, shall be held to limit the liabilities of any railroad company as common carriers, unless it shall make it appear that such limitation was actually brought to the knowledge of the opposite party and assented to by him or them, in express terms before such limitation shall take effect."    These restrictions were examined in *St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb., 463, and held applicable to contracts made in this state for the transportation of goods beyond the carrier's own line.    Irvine, C., in the case cited, after a review of the earlier decisions of this court, says: "The contract of the shipper was with the carrier first receiving the goods, and if such carrier undertook to deliver the goods at their destination, even though it contemplated doing so through intermediate carriers, it assumed a liability of such character for every part

of the route." But the rule thus stated can have no application to the facts of the case at bar, since the limitation here involved relates to the obligation of the defendant company to accept the corn in question for transportation beyond the terminus of its own road, and not to its liability as a carrier under the contract as actually made. It was the duty of the defendant company, subject to such reasonable rules as may have been adopted in the transaction of its business as a common carrier, to receive the plaintiff's corn and transport the same from the point of shipment to the terminus of its line at Missouri Valley, and there safely deliver it to a connecting carrier. But upon the delivery of goods in such case to the connecting carrier designated in the bill of lading, or contract of shipment, the common-law liability of the initial carrier ceases, and any duty on its part respecting the transportation of such goods over connecting lines results from contract obligations. It was accordingly competent for the defendant company to contract for the transportation of plaintiff's corn from Goehner station to Missouri Valley, and to stipulate that its responsibility therefor should cease upon the delivery of said corn to the Chicago & Northwestern Company. It is possible that the contract of shipment might, notwithstanding the language of the bills of lading, have been shown by extrinsic evidence to contemplate the through carriage of the corn. That question is, however, not presented by the record or the arguments of counsel and will not be further noticed in this connection. It is sufficient that the contract, unexplained, is for the transportation of the corn to Missouri Valley only; that said contract is in no proper sense a limitation of the liability of the defendant company as a common carrier, and that there is no competent evidence of an agreement between the defendant and the Northwestern Company for the issuing of through bills of lading or for the "division in definite proportions," or otherwise, of freight charges for grain forwarded by the former. The instruction above set out being unwar-

ranted by the evidence, is, as has often been held, errone-
ous. (*Newton Wagon Co. v. Diers*, 10 Neb., 284; *Esterly v. Van Slyke*, 21 Neb., 611; *Esterly Harvesting Machine Co. v. Frolkey*, 34 Neb., 110.)

It is, however, contended that the transaction between the plaintiff and McFadden, the station agent, at the time the cars in question were "ordered," amounted to a con-
tract by the latter in behalf of the defendant company which could, under the statute quoted, be modified only upon proof of actual notice to the plaintiff and his assent in express terms thereto. It is not doubted that a rail-
road company is *prima facie* liable for the failure to furnish cars in accordance with the verbal agreement of a station agent acting within the scope of his authority. (*Gulf, C. & S. F. R. Co. v. Hume*, 87 Tex., 211; *Gulf, C. & S. F. R. Co. v. Hodge*, 30 S. W. Rep. [Tex.], 829.) And the same principle was recognized by the court in *Union P. R. Co. v. Marston*, 30 Neb., 241. But the claim with respect to a verbal contract for the transportation of the corn is un-
supported by the record. The plaintiff, according to his own testimony on November 12 and 16, notified McFad-
den that he would require cars for the shipment of his corn to Chicago, whereupon the latter promised to pro-
vide cars but without naming a definite number or time for their delivery at Goehner. There was, so far as the evidence discloses, nothing said respecting the defend-
ant's undertaking, whether for the transportation to Chi-
cago or to the terminus of its own line, nor are there any facts from which we can infer an agreement on that oc-
casion for a through shipment of the plaintiff's grain. The transaction in question certainly lacks the element of certainty which is essential to all valid contracts.

There are other propositions discussed by counsel, but which are mainly incidental to the question here decided, and will not be noticed in this opinion.

For reasons above stated the judgment is reversed and the cause remanded.

REVERSED.