NEBRASKA LAND & FEEDING COMPANY V. ISAAC G. TRAUER-
MAN ET AL.

FILED JANUARY 21, 1904.   No. 13,375.

1. **Pleading**: AMENDMENT. The matter of permitting the filing of amended pleadings at any time during the trial is confided to the sound discretion of the district court and, unless it clearly appears that the court has been guilty of an abuse of such discretion, its orders in that behalf will not be disturbed.

2. **Contract**: PAROL EVIDENCE. Where a contract of sale has been consummated by writing, the presumption is that the writing contains the whole contract, and in absence of fraud, mistake, or ambiguity of expression in the contract itself, parol evidence is inadmissible to change or vary its terms.

3. **New Trial**. If an instruction be given, not called for by the evidence, and which appears to have a tendency to prejudice the party complaining, a new trial will be granted.

ERROR to the district court for Cherry county: JAMES
J. HARRINGTON, JUDGE. *Reversed.*

*Albert W. Crites,* for plaintiff in error.

*Allen G. Fisher, contra.*

BARNES, J.

On the 3d day of September, 1900, the parties to this suit entered into the following contract:

"A contract made and entered into this 3d day of September, by and between the Nebraska Land & Feeding Company of Chadron, Nebraska, party of the first part, and I. G. Trauerman & Company of Sioux City, Iowa, party of the second part. The party of the first part hereby sells and agrees to deliver to the party of the second part one thousand steer calves, all born in the year 1900. Each calf to have a white or brockle face, the calves to be delivered at Irwin, Nebraska, in two deliveries of five hundred each. The first delivery to be October 12, 1900, and the second delivery to be October 27, 1900. It is

understood and agreed that no calf shall be so delivered that is not old enough to be weaned; also that black, roan, red and white, or red calves with red or brockle faces may be delivered and accepted. The party of the second part agrees to accept the calves delivered as above, and pay for the same as follows: $21 for each calf so delivered; $2,000 to be paid on signing this contract, the balance at the time of delivery. After first delivery $1,000 shall be left with the parties of the first part till final settlement.
"Signed in duplicate.

"NEBRASKA LAND & FEEDING COMPANY,

"By WILL G. COMSTOCK, *V. Pres.*

"Witness: C. J. BEACHMIN.

"I. G. TRAUERMAN & CO."

On or before the time for the first delivery, fixed by this contract, at the instance and request of Trauerman & Company, the Nebraska Land & Feeding Company sold the 500 calves to be delivered at that time, to a third party for them and on their account. Such sale was satisfactory, and a settlement was made of the matters mentioned in the contract, so far as 'the first mentioned delivery was concerned, and the feeding company returned $1,000 of the money paid to it at the time the contract was entered into, but retained $1,000, according to the provisions of the contract. On the 27th day of October the feeding company delivered, or tendered delivery, of 500 head of calves of the age, kind and quality described in the contract, to Trauerman & Company at Irwin, Nebraska, strictly in accordance with its agreement. Neither Trauerman & Company, nor any one for them, was there present to receive the calves so tendered, and after waiting one day the feeding company drove them back to its range, a distance of some 60 miles, and at all times thereafter retained possession of the $1,000. Some correspondence was had between the parties in relation to the matters in controversy, but no settlement was ever effected. The foregoing facts are stated at the outset of this opinion because they are undisputed. On or about the 20th day of July, 1901,

Trauerman & Company commenced this action in the district court for Cherry county against the feeding company to recover the money still in its possession, together with interest thereon.

In order to state a cause of action it was alleged in the petition that "On the same day the contract was entered into for the same consideration, and after the execution thereof, it was stipulated by and between the parties thereto that upon the request of the plaintiff (Trauerman & Company) and notice of their request, the date of either delivery, or both, should be postponed for their convenience a week or ten days, and thereafter by wire the defendant proposed the cancelation of said contract, which was accepted by the plaintiffs; that subsequent to the agreement mentioned the defendant waived the performance on behalf of these plaintiffs of their portion of said contract; that long prior to October 27, 1900, the plaintiffs informed the defendant of their inability to be present and receive a delivery of 500 calves on October 27, 1900, and claimed a period of ten days wherein to make preparations for their receipt, which was not refused to them by the defendant; that on November 1, 1900, plaintiffs notified the defendant of their readiness on and after that day to receive a delivery thereof, but the defendant wholly failed and refused on that day, and ever since, to deliver said 500 head of calves, and still refuses to deliver the same down to the present time, although often requested so to do. And plaintiffs thereupon requested from defendant a final settlement of the transaction, but said defendant has wholly failed and refused to meet the plaintiffs, and failed and refused to make any settlement of their dealings and transactions above described, whereby plaintiffs have become entitled to the return to them of their said $1,000." For which amount, with seven per cent. interest, the plaintiffs prayed judgment.

The answer of the feeding company admitted the execution of the contract; admitted that by the agreement of the parties thereto so much of the contract as provided

for the sale and delivery of cattle on the 12th day of October, 1900, was rescinded, and that $1,000 of the money mentioned therein and paid over to the defendant on the execution of said contract were returned to the plaintiffs, and thereafter denied each and every other allegation contained in the petition. In addition to these facts the answer contained the following:

"And this defendant further answering said petition, respectfully avers and shows the court, that on the 27th day of October, A. D. 1900, at Irwin, Nebraska, this defendant, by its officers, agents, and servants, was present during the daytime, with five hundred head of calves agreed to be there delivered in and by said contract and ready, willing and able to make delivery thereof in pursuance of said contract, and then and there offered to make delivery of the same pursuant thereto, but neither the said plaintiffs, nor any of them, were there present to receive the same and make payment therefor in accordance with the terms of said contract, and the said plantiffs then and there wholly failed, omitted and refused to comply with the terms of said contract on their part to be done and performed, but this answering defendant has, in all respects, fully complied therewith; that by reason of the premises, this defendant has been greatly damaged and injured, and was thereby put to and incurred great loss and damages, loss of time, labor, expenses and disbursements, in gathering up said calves, and in driving them to Irwin, and holding them there, and returning them to the range of this defendant, and injury to said calves thereby, and depreciation in value, to wit, in the sum of two thousand dollars and more. Defendant denies that there ever was any agreement, arrangement or understanding whereby the time for delivery was, or might be delayed, for any cause whatever, and denies each and every allegation in said petition."

The answer concluded with a proper prayer for relief. For reply the plaintiffs filed a general denial. On these issues the cause was tried to a jury; the plaintiffs had a

verdict and judgment for the sum of $1,181.37; the defendant company prosecuted error, and will hereinafter be called the plaintiff.

1. Counsel for the plaintiff contends that the court erred in permitting the plaintiff below to file the third amended petition after the jury were empaneled, and by which the name of Amanda K. Trauerman was dropped as a member of the plaintiff company, and that of Barney S. Trauerman was substituted. This contention can not be sustained, because the record fails to disclose that such amendment resulted in any prejudice to the rights of the plaintiff. To permit the filing of an amended pleading at any time during the trial is a matter which rests within the sound discretion of the district court. In order to constitute reversible error it must be shown that the court was guilty of an abuse of such discretion. No such showing appearing of record, the order of the court on that question will be affirmed.

2. It is next contended that the court erred in receiving the evidence of the witness Trauerman for the purpose of showing that at the time of the making of the contract it was further verbally agreed between the parties that the plaintiff below should not be held to exact dates for a week or ten days as to the delivery of the calves, for the reason that the terms of a written contract can not be changed or varied by parol. We think this point is well taken. The general and well established rule is, that the terms of a valid written contract can not be contradicted, altered, added to, or varied by parol evidence. To be sure there are certain exceptions to this rule. For example, evidence of fraud, intimidation, illegality, want of due execution, want of capacity in any contracting party, the fact that the contract is wrongly dated, want or failure of consideration, mistake in fact or law, or any other matter which, if proved, would affect the validity of the contract, or any part of it; the existence of any separate oral agreement as to any matter on which the document is silent, and which is not inconsistent with its terms, if,

from the circumstances of the case, the court infers that
the parties did not intend the document to be a complete
and final statement of the whole transaction between
them; the existence of any separate oral agreement con-
stituting a condition precedent to the attaching of an
obligation under such a contract; the existence of any dis-
tinct subsequent oral agreement to rescind or modify any
such contract, provided that such agreement is not invalid
under the statute of frauds, or otherwise; by any usage or
custom by which incidents not expr^ssly mentioned in the
contract are annexed to contracts of that description, un-
less the annexing of such incident to the contract would
be repugnant to, or inconsistent with the express terms
thereof. The matter in question does not fall within any
of the foregoing exceptions. On the other hand it con-
stituted a direct attempt to change the time of the de-
livery clearly set forth in the contract itself. Again, it
appears from the allegations of the petition that there
was no consideration for the supposed oral agreement, it
having been averred that the consideration therefor was
the same as that on which the written agreement was
based. It may be further stated that where a contract of
sale has been consummated by writing, the presumption
is that the writing contains the whole contract, and parol
evidence is inadmissible to change or vary its terms.
*Brewster v. Potruff*, 55 Mich. 129; *Exhaust Ventilator
Co. v. Chicago, M. & St. P. R. Co.*, 69 Wis. 454; *McClure v.
Jeffrey*, 8 Ind. 79; *Proctor v. Cole*, 66 Ind. 576; *Robinson
v. McNeill*, 51 Ill. 225.

"Where negotiations take place between parties which
result in their reaching an agreement in reference to the
subject matter of the negotiations, and the parties subse-
quently reduce their agreement to writing, and sign and
deliver the same, then, in the absence of fraud or mistake,
or an ambiguity in the writing, it constitutes the best
and only competent evidence of the contract originally
made." *State Bank of Ceresco v. Belk*, 56 Neb. 710; *Syl-
vester v. Carpenter Paper Co.*, 55 Neb. 621.

"Parol evidence is incompetent to prove a contemporaneous oral agreement by which it is sought to change or alter the terms of a written contract and the result of which would be to change the effect of the written contract in a material portion and to insert or read into it a condition or reservation not contained in it, or implied by its terms." *Mattison v. Chicago, R. I. & P. R. Co.*, 42 Neb. 545.

We therefore hold that the court erred in receiving this evidence, and for such error the judgment should be reversed.

3. Among other errors assigned it is alleged that the court erred in giving his own instruction numbered 3 to the jury, which reads as follows:

"The jury are instructed that if the defendant has established by a preponderance of the evidence that on October 27, 1900, it brought, and had for delivery, at Irwin, Nebraska, 500 head of calves, of the character and description required by the contract, and that the defendant was ready, willing and able to make a delivery of said calves to the purchaser in accordance with the contract, then your verdict should be for the defendant, unless the plaintiff has established by a preponderance of evidence that on the day the contract was made, it was agreed between the purchaser and seller that if the purchaser so desired he might have an extension of time to receive said calves at a date later than October 27, and that within the time extended, if you find by preponderance of evidence that the time was extended, the plaintiff was ready and willing to receive and pay for said calves at Irwin, Nebraska, and perform all the conditions of said contract upon his part, and that the defendant failed, refused and neglected to perform said contract upon its part, then you should find for the plaintiff; or, if the plaintiff has established by a preponderance of the evidence that said contract was, by mutual agreement between the parties, canceled, then you should find for the plaintiff."

Under our view of the law it was error to instruct the

54

jury that they might consider the question of the change
of time of delivery, attempted to be shown by oral evidence.
But the plaintiff particularly conténds that the court
erred in giving the last clause of this instruction, by which
the jury were told that if they should find by a preponder-
ance of the evidence that the contract was, by mutual
agreement betwen the parties, canceled, they should then
find for plaintiff, for the reason that there was no evidence
of any kind introduced to support that issue. A careful
examination of the record fails to disclose a word of evi-
dence showing or tending to show that there was ever any
attempt made on the part of either of the parties to cancel
the contract. On the other hand the record discloses that
the plaintiff herein, when it returned the $1,000 to the
defendant upon the completion or rescission of that part
of the contract relating to the first delivery, informed
the defendant that it would be ready to deliver the
500 calves mentioned as the second delivery, at Irwin,
Nebraska, on the day specified in the contract, and de-
manded that the defendant ˙should be there ready to re-
ceive them and pay for them, even going so far as to sug-
gest the kind of payment desired. In addition to this it
appears that on the 26th day of October, 1900, the plaintiff
telegraphed the defendant as follows: "Calves will be in'
Irwin tomorrow. Will you be there to receive them?"
The defendant paid no attention to these notifications, but
on the 1st day of November following, and after delivery
was tendered, they wrote the plaintiff that it ought not
to hold them strictly to the date of delivery fixed by the
contract, and asked if at some future time they would be
ready to make delivery.

The rule is well settled in this court that "If an instruc-
tion be given not called for by the evidence, and which had
a direct tendency to prejudice the party complaining, a
new trial will be granted." *Matthewson v. Burr*, 6 Neb.
312; *Harrison v. Baker*, 15 Neb. 43; *Fremont, E. & M. V.
R. Co. v. Waters*, 50 Neb. 592.

Such we think was clearly the effect of the instruction

complained of, and therefore the judgment should be reversed.

The petition in error contains many other assignments, but being compelled, for the foregoing reasons, to reverse the judgment, it will be unnecessary for us to consider them.

For the errors above mentioned, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.