ISAAC G. TRAUERMAN ET AL., APPELLEES, V. NEBRASKA LAND & FEEDING COMPANY, APPELLANT.

FILED OCTOBER 22, 1910. No. 16,156.

Appeal: SUFFICIENCY OF EVIDENCE. Upon an issue as to whether a certain contract of sale was abandoned and repudiated by the buyer a verdict based upon a finding that the contract was not abandoned will not be disturbed when there is sufficient competent evidence to support it.

APPEAL from the district court for Cherry county: JAMES J. HARRINGTON, JUDGE. *Affirmed.*

*Albert W. Crites,* for appellant.

*Andrew M. Morrissey* and *Allen G. Fisher,* contra.

LETTON, J.

The facts in this case have been fully stated in the preceding opinions, *Nebraska Land & Feeding Co. v. Trauerman,* 70 Neb. 795, and *Trauerman v. Nebraska Land & Feeding Co.,* 77 Neb. 403. When the case was last before the court a judgment had been rendered in favor of the defendant. The defendant then insisted that the principle governing the disposition of the case was that announced in *Walter Bros. v. Reed & Gerard,* 34 Neb. 544, and *Lexington Mill & Elevator Co. v. Neuens,* 42 Neb. 649. It was pointed out in the opinion that in those cases the purchaser had absolutely refused to proceed further in performance of his contract, but that, under the evidence in this case, it was not clear that the plaintiffs had absolutely repudiated it, and it was held that if on another trial it could be established that the plaintiffs had not abandoned the contract, but at a later date were ready and willing to receive and pay for the calves, then whatever damages the defendant may have sustained in consequence of the plaintiffs' failure to strictly fulfil its terms should be allowed, and plaintiffs permitted to recover the surplus in defendant's hands, if any. The cause was again submitted under instructions in substantial accordance with the principles announced in the two opinions of this court, and the jury returned a verdict for $800 in favor of the plaintiffs. Defendant appeals.

It is impracticable to set out all the evidence, which largely consists of letters and telegrams. Among other letters it is shown that on October 19, 1900, a letter was written on behalf of the plaintiffs from O'Neill, Nebraska, to the defendant at Chadron, Nebraska. The letter is ambiguous and uncertain in its language, but may be fairly construed as a request to defendant to sell the 500 calves

bought for the second delivery (as it had done with the calves bought for a prior delivery), and says also: "We doubt very much if we will be able to handle them at the specified time, October 27." The defendant introduced a letter-press copy of a letter dated October 20, 1900, which stated that they were unable to find a purchaser for the calves which were to be delivered October 27, and that they would be obliged to hold plaintiffs upon the contract, saying further: "Trust that you will be on hand for the second delivery." Both Mr. Trauerman and his foreman testify that such a letter as this was never received by them either at Sioux City or at O'Neill. It appears that on October 19 Mr. Trauerman left his ranch at O'Neill for a trip into South Dakota to make provision for taking care of the cattle, which had been returned upon his hands, mentioned in his letter of October 19. Trauerman also testifies that upon his return to Sioux City on October 31 he was handed a telegram sent by the defendant on October 26, notifying him that the calves would be at Irwin tomorrow, and asking if he would be there to receive them, and that the next day he wrote the following letter: "Sioux City, Iowa, Nov. 1, 1900. Nebraska Land & Feeding Co., Chadron, Nebraska. Gentlemen: On my arrival home last night your message was handed me stating that you would have calves at Irwin on Oct. 26th, we having written you that it would be impossible for us to receive the calves until a week or ten days later, and we think you certainly should have the consideration for us in not insisting on exact date of delivery, which was following up the personal conversation we had with Mr. Comstock at the time we bought the cattle, as he distinctly said you would not be particular and not insist on exact dates, we therefore would like to know what you have done in reference to the matter, as we heard nothing more in reply to our letter, and therefore desire to hear from you at once and we will then arrange to fulfil our contract. Respectfully yours, I. G. Trauerman & Co." He also testifies that previous to October 27 he had telephoned

the general freight agent at Omaha for rates, and to ascertain whether he could get cars in which to ship these cattle.

Other evidence as to prior dealings, and as to later efforts of plaintiffs to obtain delivery, was before the jury. On the whole evidence the jury might well find that the proof of abandonment of contract was not clear, and that the defendant was only entitled to actual damages sustained. The cost of delivery and return was proved; also evidence was given pro and con as to shrinkage in the value of the calves. Judging only from the amount of recovery, we think it probable that the jury in fixing the damages took into account the fact that defendant had the benefit of the use of the $1,000, advance payment, for nearly ten years. Perhaps, considering the fact that the jury were of the vicinage and better fitted to weigh evidence and determine questions of fact relative to the value of live stock in the western part of the state than the members of this court are, the amount of damage allowed defendant is fully compensatory. Under such circumstances, we would not be justified in setting aside the verdict, even if we thought the amount recovered more than it should have been.

Complaint is made as to the giving and refusing of instructions, but the case seems to have been submitted so as to place fairly before the jury the respective contentions of the parties and the law applicable thereto.

The judgment of the district court is

AFFIRMED.